ROBERT P. RUSSELL, Corporation Counsel, Milwaukee County
You request my opinion whether sec. 59.07 (1), Stats., is broad enough to permit Milwaukee County to engage in a program of furnishing housing to the elderly in cooperation with the United States Department of Housing and Urban Development utilizing sec. 23 of the Housing Act of 1937. The county would apply for financial assistance from HUD for 150 dwelling units and would act as a clearing house for elderly tenants and rental properties. Tenants who qualify would be placed by Milwaukee County in one of the privately-owned rental units with the tenant and county paying the rent. HUD would reimburse the county for the amount of the rent subsidy plus the cost of administering the program. Title would remain in the federal agency until the property is purchased by the low-income family.
I am of the opinion that the provisions of sec. 59.07 (1), Stats., are not sufficiently broad to support such a program.
Counties have only such legislative powers as are expressly granted by statute or necessarily implied. Maier v. Racine County
(1957), 1 Wis.2d 384, 84 N.W.2d 76.
Section 59.07 (1) (a), Stats., does grant the county broad general power to acquire, hold, lease, or rent real and personal property "for public uses or purposes of any nature, including without limitation acquisitions for county buildings, airports, parks, recreation, highways, dam sites in parks, parkways and playgrounds, flowages, sewage and waste disposal for county institutions, lime pits . . ." etc. Subsection (d) permits the county to:
 "(d) Construction, maintenance and financing of county-owned buildings and public works projects: 1. Construct, *Page 298 
purchase, acquire, lease, develop, improve, extend, equip, operate and maintain all county buildings, structures and facilities hereinafter in this subsection referred to as "projects", including without limitation swimming pools, stadiums, golf courses, tennis courts, parks, playgrounds, bathing beaches, bathhouses and other recreational facilities, exhibition halls, convention facilities, convention complexes, including indoor recreational facilities, dams in county lands, garbage incinerators, courthouses, jails, schools, hospitals, home for the aged or indigent, regional projects, sewerage disposal plants and systems, and including all property, real and personal, pertinent or necessary for such purposes.
 "2. Finance such projects, . . . by the issuance of mortgage bonds under s. 66.066, and payable solely from the income, revenues and rentals and fees derived from the operation of the project . . .
 "3. Operate or lease such projects in their entirety or in part, impose fees or charges for the use of or admission to such projects. Such projects may include space designed for leasing to others if such space is incidental to the purposes thereof."
The Milwaukee County proposal is essentially a management contract for the furnishing of housing to the elderly. From the information given it is not clear that the county would acquire any interest in real estate or occupy the position as landlord. Whereas sec. 59.07 (1) (a), (d), Stats., is to be construed broadly, in favor of power in the county, it is noted that the purposes listed in the statute do not include furnishing of housing to the elderly or persons of low income except in the form of "home for the aged or indigent." Permissible public purposes must be construed in light of those listed and be somewhat similar in nature. Since the legislature has, in sec.59.07 (55), Stats., provided power in a county over 500,000 to provide housing for "persons who have resided in such county for more than 2 years and whose income is insufficient . . ." and has provided in sec. 59.075, Stats., that the county may utilize the provisions of secs. 66.40 to 66.404, Stats., to create a housing authority to provide housing for persons of low income, it is my opinion that the legislature intended that such housing be furnished under one of the last mentioned statutes. Section 66.395, Stats., does *Page 299 
permit cities to create a housing authority for elderly persons regardless of income; however, the legislature has not made that statute applicable to counties.
Section 59.075 (3), Stats., is a provision which attempts to prevent overlapping jurisdiction and provides that a county housing authority shall not undertake any housing project within a city or village unless such municipality passes a resolution indicating a need for the county housing authority to exercise its power within the city or village. Section 66.4325, Stats., providing for a housing and redevelopment authority in cities of the first class, also contains provisions to prevent overlapping jurisdiction between such authority and "any housing authority created under s. 66.40 operating in such city . . ."
These specific provisions relating to the manner in which housing can be furnished to the elderly and persons of low income, and accompanying restrictions, are indications that the legislature did not intend that counties should have power to furnish or manage housing facilities for the aged, other than in county-owned, leased or operated homes for the aged or indigent under the general provisions of sec. 59.07 (1), Stats.
Milwaukee County evidently does not wish to utilize secs. 59.075 and 66.40-66.404, Stats., to proceed under a county housing authority. Cooperation of the City of Milwaukee and other cities and villages within the county would be needed. Section59.07 (55), Stats., when construed with sec. 59.07 (1), Stats., does give the county full power to undertake the project desired. The Department of Housing and Urban Development objects to the two-year residency requirement in the statute. While it may be constitutionally suspect, it is presumed valid until declared invalid in a proper action. I am of the opinion that such restriction is severable. I suggest that, if the county wishes to proceed, renewed effort be made to secure federal financing through the use of that statute. The county may wish to sponsor legislation to remove the residency restriction which the federal agency questioned as early as 1972.
RWW:RJV *Page 300